IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS LAVEL SMITH, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) No. 19 C 6186 |
| | ) |
| R. HEISNER, Warden, Metropolitan | ) Judge Virginia M. Kendall |
| Correctional Center Chicago, | ) |
| | ) |
| *Respondent*. | ) |

## MEMORANDUM ORDER AND OPINION

Petitioner Thomas L. Smith brings this *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2441. (Dkt. 1). The Petition challenges the finding of a Bureau of Prisons ("BOP") Center Discipline Committee ("CDC") and the decision of a BOP Discipline Hearing Officer ("DHO") who imposed a sanction of the loss of forty days of Good Conduct Time ("GCT") for his alleged use of a controlled substance. (*Id.* at ¶ 6). The Petition requests that the Court vacate the CDC's finding and the DHO's decision on the grounds that they were issued in violation of his Due Process rights.[1] (*Id.* at p. 3). For the reasons set forth below, Smith's Petition (Dkt. 1) is denied.

### BACKGROUND

In 2012, Thomas L. Smith pleaded guilty to one count of access device fraud under 18 U.S.C. § 1029(a)(2). (Dkt. 27 at p. 14); *United States v. Smith*, No. 1:12-cr-138, Dkt. 98 (W.D. Mich. Dec. 10, 2012). Judge Neff of the Western District of Michigan sentenced Smith to 92-months' incarceration, followed by two years of supervised release. *United States v. Smith*,

---

[1] The Petition does not explicitly cite Due Process as the grounds for this Petition. But viewing the Petition in the most favorable light to the Petitioner, the Court construes the Petition as essentially making a Due Process argument.

1

No. 1:12-cr-138, Dkt. 94 (W.D. Mich. Dec. 10, 2012).

At the time of the incident at issue in this Petition, Smith was participating in BOP's Residential Drug Abuse Program. (Dkt. 1-2 at p. 1.) As part of this program, Smith was asked to provide a urine sample on September 2, 2018. (*Id.*). Alere Toxicology Services ("Alere") conducted the urinalysis of Smith's sample. (Dkt. 27 at pp. 52–53). The test came back positive for extended opiates, specifically codeine. (*Id.* at p. 52). The CDC charged Smith with violating BOP Code 112, which prohibits the use of narcotics. (*Id.* at p. 45). At 6:09 PM on September 10, 2018, the CDC provided Smith with written notice of the charge. (*Id.*). Smith waived his right to have written notice of the charge at least 24 hours before appearing before the CDC in order to proceed with the disciplinary hearing in an expedited fashion. (*Id.* at p. 62). The next day, September 11, 2018, at 4:00 PM, the CDC held a disciplinary hearing. (*Id.* at p. 45). The CDC informed Smith that he was entitled to a staff representative, to present a statement, to call witnesses, and to present documentary evidence. (*Id.* at pp. 45–46). He declined a staff representative and declined to call witnesses. (Dkt. 27 at pp. 45–46). Instead, he presented a statement and documentary evidence. (*Id.*). In his statement, Smith denied ingesting any controlled substances and argued that the result was a false-positive caused by his consumption of poppy seeds the day before he provided his urine sample. (*Id.* at p. 46). Smith presented evidence in the form of a credit card transaction receipt indicating a purchase was made at Portillo's on September 1, 2018, photocopies demonstrating that Portillo's serves hot dogs on poppy-seed buns, and webpages discussing the possibility of poppy seeds causing false-positive results for the presence of opiates. (*Id.* at pp. 34–37).

The CDC subsequently requested information from Alere about poppy seeds' effects on a urinalysis. (*Id.* at p. 89). A toxicologist from Alere responded via email, stating: "I have not seen

any research indicating the detection of *only* codeine from the ingestion of poppy seeds." (*Id.*) (emphasis added). The toxicologist also provided the CDC with a document titled "Morphine Positives." (Dkt. 27 at p. 91). This document contained excerpts from studies explaining that after subjects consumed poppy seeds, the subjects tested positive for *only* morphine or for *both* morphine *and* codeine. (*Id.*). No subjects tested positive for *only* codeine. (*Id.*).

In reaching its finding that Smith violated Code 112, the CDC considered nine pieces of documentary evidence: BOP's Incident Report, BOP's Investigation, Alere's urinalysis report, BOP's chain-of-custody form, the Alere toxicologist's email, the Morphine Positives document, Smith's credit card transaction from Portillo's, Smith's photocopies of Portillo's hot dogs served on poppy-seed buns, and Smith's webpages. (*Id.* at pp. 46–47). Based on this evidence, the CDC found the "greater weight of the evidence" supported finding that Smith violated Code 112 and recommended that Smith be sanctioned with "appropriate loss of Good Conduct Time." (*Id.*).

On September 28, 2018, a DHO reviewed the CDC finding to ensure the CDC complied with applicable BOP guidelines. (Dkt. 27 at pp. 65–67). The CDC forwarded eight of the nine pieces of documentary evidence to the DHO, omitting the Alere Toxicologist's email. (*Id.* at p. 66). The DHO certified the CDC's finding and sanctioned Smith with the loss of forty days of GCT. (*Id.* at pp. 49, 66).

On November 13, 2018, BOP's North Central Regional Office received from Smith an appeal of the CDC's finding and the DHO's decision. (Dkt. 1-2 at p. 7). The Regional Office denied his appeal on January 12, 2019. (*Id.*) On January 28, 2019, BOP Central Office received an appeal from Smith appealing the decision of the Regional Office. (Dkt. 27 at p. 18).

In March 2019, while waiting for the Central Office's response, Smith filed the instant Petition, challenging the finding of the CDC and decision of the DHO disallowing forty days of

GCT, as well as his apparent loss of eligibility for early release from BOP's Residential Drug Abuse Program. (Dkt. 1 at p. 3; Dkt. 27 at p. 2 n.1).[2] The Central Office denied Smith's appeal on July 10, 2019. (*Id.* at p. 17).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Before reaching the merits of Smith's Petition, the Court must examine whether the Petitioner properly exhausted his administrative remedies before filing the Petition. The general rule is that a petitioner must "'exhaust prescribed administrative remedies before seeking relief from the federal courts.'" *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)). Federal courts may excuse a petitioner's failure to exhaust administrative remedies when, *inter alia*, "requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action." *Iddir v. Immigration & Naturalization Serv.*, 301 F.3d 492, 498 (7th Cir. 2002)).

A BOP inmate must go through two appeals within the BOP system in order to exhaust his administrative remedies. First, an inmate may appeal a DHO's decision to the Regional Office. 28 C.F.R. § 542.15. If the inmate's appeal is denied, the inmate may appeal the DHO's decision to the Central Office. *Id.* In this case, Smith timely appealed the DHO's decision to the Regional Office. (Dkt. 27 at p. 11). After the Regional Office denied his appeal, Smith timely appealed to the Central Office. (*Id.*). The Central Office initially stamped Smith's appeal as "received" on January 28, 2019. (*Id.* at p. 18).[3] Pursuant to BOP Program Statement 1330.18, the Central Office

---

[2] Smith's Petition challenges the "[l]oss of good time 1 year from the drug program and 40 days from the Bureau of Prisons." (Dkt. 1 at p. 3). The only sanction in the record is the loss of 40 days of GCT. (Dkt. 27 at pp. 49, 66.) It appears that by "[l]oss of good time 1 year from the drug program," Smith is referring to his loss of eligibility for one-year early release from BOP's Residential Drug Abuse Program. (*Id.* at p. 2 n.1).
[3] The Central Office stamped Smith's appeal as "received" again on March 4, 2019. (Dkt. 27 at p. 18).

4

shall respond to an inmate's appeal within forty calendar days. BOP Program Statement 1330.18, Administrative Remedy Program at 9. If forty calendar days is insufficient, the Central Office may extend its time to respond *once* by twenty calendar days. *Id.* Because the Central Office received Smith's appeal on January 28, 2019, the Central Office should have responded to Smith's appeal by March 9, 2019. (Dkt. 27 at p. 18). Even if the Central Office had extended its time to respond, it should have responded to Smith's appeal by March 29, 2019, at the latest. (*Id.*). On March 11, 2019, while waiting for the Central Office's overdue response, Smith filed the instant Petition. (Dkt. 1 at 8). The Central Office did not respond to Smith's appeal until July 10, 2019, purportedly due to the government shutdown. (Dkt. 27 at p. 17; Dkt. 1 at p. 7).

Although Smith filed his appeal to the Central Office before he filed this Petition, the Central Office did not decide his final appeal until after he filed this Petition. Therefore, Smith did not comply with the exhaustion requirements. However, Smith has a strong case to make that he was excused from complying with the exhaustion requirements on account of BOP's long and indefinite delay in processing his appeal. Smith's final appeal was subject to unreasonable delay because the Central Office took almost six months to respond to Smith's petition when its own rules require a response within forty days. On April 4, 2019, the Central Office notified Smith that it needed "additional time" to respond to his appeal and that its response was due by May 3, 2019. (Dkt. 15 at p. 4). The Central Office did not respond until two months past that due date. (Dkt. 27 at p. 17). Given this unreasonable delay, the Court excuses Smith's failure to exhaust his administrative remedies before filing the instant Petition and will reach the merits of the Petition.

## II. Due Process in Administrative Hearings

When an inmate challenges a prison disciplinary hearing on Fifth Amendment grounds, this Court examines: (1) whether BOP deprived the inmate of a liberty interest; and (2) whether

BOP afforded the inmate all the process the inmate was constitutionally due. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019) (citing *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)). For purposes of the instant Petition, the Court must therefore examine whether Smith had a liberty interests in eligibility for early release from BOP's Residential Drug Abuse Program or in his accrued GCT.

### *a. Loss of Early-Release Eligibility*

Smith does not have a liberty interest in his eligibility for one-year early release from the Residential Drug Abuse Program. After successful completion of a drug abuse treatment program, a federal inmate convicted of a nonviolent offense may be eligible for up to one-year early release from custody. 18 U.S.C. § 3621(e)(2)(B). The determination that an inmate is eligible for early release is a completely discretionary decision by BOP; an inmate's hope for early release is a "[u]nilateral expectation[] and hope[]," not a liberty interest. *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001); *see also Hyche v. Chandler*, 299 F.App'x 583, 584 (7th Cir. 2008) ("[P]risoners have no entitlement to parole, and a hope to be released on parole in a discretionary system does not create a protected 'liberty' or 'property' interest . . . ."). Because Smith had no liberty interest in eligibility for early release from the Residential Drug Abuse Program, the Court need not explore whether the process by which BOP made him ineligible for early release satisfied Due Process requirements.

### *b. Loss of Good Conduct Time*

Smith does have a liberty interest in his accrued GCT. *See Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011) (explaining that inmates have a liberty interest in their good time credits). The instant Petition is the proper vehicle for challenging the revocation of that liberty interest because Section 2241 applies to challenges to the revocation of GCT. *Id.* at 845. And Smith's Petition is

not moot. A favorable decision by this Court would restore his 40 days of GCT, possibly ending his term of supervised release early. This "potential benefit" means his Petition is ripe for review. *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018).

Given that Smith has a liberty interest in his GCT, the Court must explore whether the process by which BOP revoked his GCT violated his Due Process rights. Federal inmates "must be afforded due process before any of their [GCT] . . . can be revoked." *Jones*, 637 F.3d at 845. An inmate receives due process at a prison disciplinary hearing if the inmate receives: "(1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id*. A disciplinary decision must also be supported by "some evidence." *Id.* (citations omitted).

Although Smith only received written notice of the charge 21 hours and 51 minutes before his hearing,[4] Smith voluntarily waived his right to have written notice of the charge at least 24 hours before the hearing. (Dkt. 27 at p. 62). Pursuant to 28 C.F.R. § 541.8(c), such a waiver is permissible.[5] Smith therefore received the requisite notice.

BOP gave Smith "an opportunity to call witnesses and present documentary evidence . . . to an impartial decision-maker." *Jones*, 637 F.3d at 845. BOP notified Smith that he was entitled to present witnesses, but Smith declined to do so. (Dkt. 27 at pp. 45–46). Instead, he presented three forms of documentary evidence to an impartial decision-maker:[6] a credit card transaction,

---

[4] The CDC provided Smith with written notice of the charge at 6:09 PM on September 10, 2018, and conducted his disciplinary hearing at 4:00 PM the next day. (Dkt. 27 at pp. 60, 45).

[5] Title 28 C.F.R. § 541.8(c) reads: "*Timing*. You will receive written notice of the charge(s) against you at least 24 hours before the DHO's hearing. You may waive this requirement, in which case the DHO's hearing can be conducted sooner." 28 C.F.R. § 541.8(c) (2019).

[6] Smith does not contest that the decision-maker was impartial.

7

photocopies of Portillo's food, and webpages explaining the effects of poppy seeds. (Dkt. 27 at pp. 34–37).

BOP satisfied the final Due Process requirement by providing Smith with "a written statement of the evidence it relied on" in the form of a CDC Report. *Jones*, 637 F.3d at 845; (Dkt. 27 at pp. 46–47). In this report, the CDC listed the evidence it relied on, including BOP's Incident Report, BOP's Investigation, BOP's chain-of-custody form, Alere's urinalysis report, the Alere toxicologist's email, the Morphine Positives document, Smith's credit card transaction from Portillo's, Smith's photocopies of Portillo's hot dogs served on poppy-seed buns, and Smith's webpages. (*Id.*). The CDC also provided Smith with a statement of reasons for its disciplinary action: "the sanctions were recommended to encourage the inmate to make better choices, maintain clear conduct and to ensure that he understands the seriousness of his actions." (*Id.* at p. 49).

BOP also satisfied the final Due Process requirement; namely, that its decision be supported by "some evidence." *Jones*, 637 F.3d at 845. The "some evidence" standard is a lenient one. *Webb v. Anderson*, 224 F.3d 649, 651 (7th Cir. 2000) (citing *Lenea v. Lane*, 882 F.2d 1171, 1175 (7th Cir.1989)). It is "less exacting than the preponderance of the evidence standard," *McPherson*, 188 F.3d at 786, requiring "no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 651 (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56.

In the instant case, the DHO's decision to sanction Smith was supported by more than a modicum of evidence. Specifically, the decision was supported by five pieces of documentary

evidence: BOP's Incident Report; BOP's Investigation; BOP's chain-of-custody form; Alere's urinalysis report showing Smith's urine tested positive for the presence of extended opiates—codeine at 351 nanograms per milliliter; and the Morphine Positives document indicating that, in the referenced studies, no subjects who consumed poppy seeds tested positive for *only* codeine. (Dkt. 27 at pp. 46–47). The DHO also considered Smith's receipt from Portillo's, Smith's photocopies of Portillo's hot dogs served on poppy-seed buns, and Smith's webpages. (*Id.*). The fact that the DHO considered eight pieces of documentary evidence—at least five of which supported a finding that Smith used prohibited narcotics—indicates that the DHO's decision was supported by some evidence. Smith therefore received all the process he was due in the proceedings that led to the revocation of forty days of GCT.

### III.    Additional Evidence

Smith's final argument is that BOP violated his Due Process rights by refusing to consider an additional piece of evidence that he supplied in an administrative appeal. On September 12, 2018, the day after his disciplinary hearing, Smith voluntarily subjected himself to second drug test. (Dkt. 1-1 at p. 3). He visited a testing center named About My Health and provided a hair sample. (*Id.*). According to About My Health's drug test report, Smith's hair tested negative for the presence of opiates. (*Id.* at p. 2). Smith presented this Court with a copy of About My Health's drug test report and a printout of About My Health's webpage suggesting that its hair tests would show drugs used within the previous 90 days. (*Id.* at pp. 1–3). Because Smith did not subject himself to the second drug test until the day after the disciplinary hearing, he did not and could not have presented the second drug test report at the disciplinary hearing. Consequently, the CDC and DHO did not consider the second drug test report when they made their finding and decision. (Dkt. 27 at pp. 46, 66).

Although Smith claims he included the second drug test report in his appeals to the Regional Office and the Central Office, (*Id.* at pp. 30–32, 18), neither the Regional Office nor the Central Office reference the second drug test in their decisions. (Dkt. 1–2 at p. 7; Dkt. 27 at p. 17). Even if he did present that evidence on appeal, Smith points to no authority that would require the Regional or Central Offices to consider new evidence on appeal. *Cf. McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999) ("Due process in [the prison disciplinary] context does not include a right to submit further evidence on appeal."). BOP's consideration, or lack thereof, of additional evidence on appeal is "irrelevant" to determining whether the underlying proceedings "accorded [Smith] all of the process that was due under the Constitution." *Id.* Even if BOP had considered this additional evidence, BOP's decision to revoke Smith's GCT would still be supported by enough evidence to satisfy the "some evidence" threshold.

## CONCLUSION

The Bureau of Prisons afforded Smith all the process he was due, and the DHO's decision to sanction him with the loss of forty days of good conduct time was supported by sufficient evidence. Accordingly, Smith's Petition [1] is denied.

Virginia M. Kendall
United States District Judge

Date: March 26, 2020